DECISION
{¶ 1} Relator, Charlotte J. Hadley, filed this original action requesting a writ of mandamus compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her motion for relief under R.C. 4123.522 and to enter an order granting that relief.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court grant the requested writ. (Attached as Appendix A.) The commission and respondent, The Inn at Medina ("employer"), filed objections to that decision.
 {¶ 3} Neither respondent filed objections to the magistrate's findings of fact, and we adopt them as our own. Nevertheless, we restate here those facts necessary for our discussion.
 {¶ 4} In brief, the commission issued an order on November 23, 2004, denying relator's claim for benefits. The order reflects that the commission mailed the order on November 26, 2004. Relator alleges that she did not receive the November 26, 2004 notice. On April 5, 2005, after being informed by her doctor in December 2004 that her claim had been denied and being informed by her employer in February 2005 that her claim had been denied, relator moved for relief under R.C. 4123.522. Following a hearing, the commission denied relator's request for relief. This action in mandamus followed.
 {¶ 5} R.C. 4123.522 provides that, if any person to whom a notice is mailed does not receive the notice and the commission, upon hearing, determines that "the failure was due to cause beyond the control and without the fault or neglect of such person or his representative and that such person or his representative did not have actual knowledge of the import of the information contained in the notice," then the person may take action (for example, file an appeal of the original order) within 21 days of the commission's determination that the notice failed. R.C. 4123.522 also provides: "Delivery of the notice to the address of the person or his representative is prima-facie evidence of receipt of the notice by the person."
 {¶ 6} Before the commission, relator submitted an affidavit, which stated that she did not receive the November 23, 2004 order. Relator stated that her doctor informed her in December 2004 that her claim had been denied and, consequently, she would have to find another care provider. Also, in February 2005, the employer advised relator that her employment was being terminated because her claim for workplace injury benefits had been denied, and they could not accommodate her non-work-related medical restrictions.
 {¶ 7} In findings mailed May 13, 2005, a staff hearing officer of the commission denied relator's claim for relief based on two findings: first, that relator had actual knowledge of the information contained in the November 2004 order in December 2004 when she spoke with her doctor; and second, that there was no evidence that the November 2004 order had been returned as undeliverable.
 {¶ 8} The magistrate found that both of these findings constitute an abuse of discretion. As to the notice issue, although acknowledging that the order had not been returned as undeliverable, the magistrate found "there is no evidence that the order was actually delivered to the correct address." As to the issue of actual knowledge, while acknowledging that Dr. Daniel J. Brustein had informed relator that her claim had been denied, the magistrate found that Dr. Brustein had not conveyed to relator information regarding her rights of appeal from that denial.
 {¶ 9} Respondents filed objections to the magistrate's decision, essentially arguing that the magistrate misapplied the presumption of notice applicable through R.C. 4123.522. We agree.
 {¶ 10} As the magistrate explained, R.C. 4123.522 provides "a rebuttable presumption, sometimes called the `mailbox rule' that, once a notice is mailed, it is presumed to be received in due course." Weiss v. Ferro Corp. (1989), 44 Ohio St.3d 178, 180. In order to successfully rebut that presumption, the party alleging the failure to receive notice must prove that:
(1) [T]he failure of notice was due to circumstances beyond the party's or the party's representative's control, (2) the failure of notice was not due to the party's or the party's representative's fault or neglect, and (3) neither the party nor the party's representative had prior actual knowledge of the information contained in the notice.
State ex rel. LTV Steel Co. v. Indus. Comm. (2000),88 Ohio St.3d 284, 286.
 {¶ 11} Before the commission, relator submitted an affidavit stating that she had not received notice. She did not, however, present any evidence that the "failure of notice was due to circumstances beyond" her control or that the "failure of notice was not due" to her or her representative's fault or neglect. She did not, therefore, overcome the presumption of notice that existed once the commission presented evidence that the order was mailed on November 26, 2004, the address was correct, and the notice was not returned. Thus, the commission did not abuse its discretion in finding that relator was not entitled to relief, and we sustain respondents' objections to that effect.
 {¶ 12} Having sustained respondents' objections to the magistrate's decision, and following our independent review of the evidence, we deny the requested writ.
Objections sustained, writ of mandamus denied.
Petree and McGgrath JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Charlotte J. Hadley, :
Relator, :
v. : No. 05AP-766
Industrial Commission of Ohio : and The Inn at Medina, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on January 24, 2006 Calhoun, Kademenos, Heichel Childress Co., L.P.A., andJoshua A. Dunkle, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent Industrial Commission of Ohio.
Hanna, Campbell Powell, LLP, Peggy L. Marting and Lori A.Whitten, for respondent The Inn at Medina.
 IN MANDAMUS {¶ 1} In this original action, relator, Charlotte J. Hadley, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her motion for R.C. 4123.522 relief and to enter an order granting said relief.
Findings of Fact:
 {¶ 2} 1. On September 22, 2004, relator filed an application for workers' compensation benefits alleging that she sustained an industrial injury on September 14, 2004, in the course of her employment with respondent The Inn at Medina ("employer"), a state-fund employer. The industrial claim is assigned claim number 04-404099.
 {¶ 3} 2. On October 8, 2004, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order allowing the claim for lumbar sprain and right hip and thigh sprains.
 {¶ 4} 3. The employer administratively appealed the bureau's order.
 {¶ 5} 4. The employer's appeal was heard by a district hearing officer ("DHO") on November 23, 2004. Relator appeared at the hearing without counsel. Following the hearing, the DHO issued an order that vacates the bureau's order and denies relator the right to participate in the state insurance fund.
 {¶ 6} 5. The DHO order explains:
The District Hearing Officer is not persuaded that the claimant was injured while lifting and transferring a resident in the course of her employment as a resident assistant with the instant employer on or about 9/14/2004.
The District Hearing Officer notes the claimant's delay in reporting her alleged 9/14/2004 workplace accident to her employer and her delay in seeking initial treatment for said alleged accident. The claimant has a history of back problems, including a 6/16/2004 workplace injury claim allowed for a lumbosacral sprain with the same employer with whom she was hired in February 2004.
The initial treatment records of the Allen Medical Center Emergency Department dated 9/17/2004 indicate an onset of symptoms on 9/16/2004 with the claimant denying any specific injury. This initial medical record is not consistent with the claimant's assertion of a 9/14/2004 workplace accident.
Based upon the foregoing, the District Hearing Officer orders that the requested claim is denied in its entirety.
 {¶ 7} 6. The DHO's order indicates that it was mailed to relator at her address on November 26, 2004. It also indicates that relator has no representative since no representative is listed for mailing purposes. The order also informs: "An Appeal from this order may be filed within 14 days of the receipt of the order."
 {¶ 8} 7. On December 2, 2004, relator presented for medical treatment at her employer's managed care organization ("MCO") where Daniel J. Brustein, M.D., is the medical examiner and Michelle Watterson, R.N., is employed as a nurse. On December 2, 2004, Watterson wrote the office note relating to the visit:
This is a 60-year-old nursing assistant who presents for followup for her lumbosacral strain she sustained at work on 09/14/2004. At this time, the patient describes her pain as an aching discomfort and is unable to place a number on a 0 to 10 scale. She has been working following restrictions. She saw Dr. Markarian on 11/22/2004 and states that he advised her that semi-permanent restrictions would be beneficial for her to include minimal bending and lifting. She does not have a followup appointment with Dr. Markarian. She continues to complain of low back discomfort with radicular symptoms down the right posterior leg to mid thigh but describes it as a discomfort and not a "pain." She has continued physical therapy with good improvement overall. At this point, she has attended 17 physical therapy sessions. She had a hearing on 11/23/04 but has not heard anything as of today.
 {¶ 9} 8. Four weeks later, on December 30, 2004, relator presented to the MCO for additional follow-up care. On this visit, relator was seen by Dr. Brustein, who wrote:
SUBJECTIVE/INTERIM HISTORY:
This is a followup examination for this 60-year-old nursing assistant who sustained a low back injury at work on 09/14/2004. She was last seen here on 12/02/2004 reporting a gradual improvement in symptoms. She presents today reporting that she has been on appropriate restricted duty since about 11/05/2004. She is doing no patient lifts and is working mostly in the laundry room with minimal lifting and bending. She tolerates pushing and pulling the wheeled laundry buggies without problems and is using no medications. She finished physical therapy on 12/10/2004, and a note from the therapist documents that she is compliant with her home exercise program but that it is "unlikely that the patient will return to a state were [sic] lifting during the day is possible without a high rate of re-injury." The patient now complains of intermittent low back pain with radiation to the right hip and leg and significant discomfort at the right foot.
* * *
ASSESSMENT:
Lumbosacral strain with L4-5 disc bulge and moderate to severe right neuroforaminal narrowing. This claim has been definitively disallowed for administrative reasons.
 {¶ 10} 9. By letter dated February 7, 2005, relator was informed by her employer that her employment was being terminated effective February 7, 2005. The letter explains:
It would appear that your physician has placed permanent restrictions on your job duties that prevent you from performing the essential functions of your position as a Resident Aide.
It is not, and has not been, The Inn's policy to accommodate non work-related medical restrictions. Your restrictions were only accommodated while your workers' compensation claim was in the hearing process. It has recently come to our attention that your claim has been denied as a workplace injury. As previously stated, our policy does not permit us to provide restricted duty for non work-related medical conditions.
 {¶ 11} 10. Thereafter, relator obtained counsel.
 {¶ 12} 11. On April 5, 2005, relator, through counsel, moved for R.C. 4123.522 relief with respect to the DHO order of November 23, 2004. In support of her motion, relator submitted an affidavit, executed April 1, 2005, stating: "I state that I did not receive the District Hearing Officer's Order from the hearing held on November 23, 2004."
 {¶ 13} 12. Relator's motion for R.C. 4123.522 relief was heard by a staff hearing officer ("SHO") on May 10, 2005. The hearing was recorded and transcribed for the record. At the hearing, relator was extensively cross-examined by employer's counsel. During the cross-examination, the following exchange occurred:
[Employer's Counsel]: Okay. When did you first become aware that your claim had been denied?
[Relator]: I don't remember.
Q. All right. You saw — you treated with Dr. Brustein, correct?
A. Yeah. I guess it's when they turned me loose, when Dr. Brustein had said that, "you're no longer under Workers' Comp, I can't treat you any longer, they denied your claim." And that's the first I can — that I realized that I didn't have a claim any longer.
Q. So you were aware when you saw Dr. Brustein for the last time that your claim had been disallowed, correct?
A. Uh-huh. That was, like, sometime in January, I believe.
Q. That was in December.
A. Was it December? I don't remember the exact.
Q. And when you saw Dr. Brustein the time before that, you hadn't received an order yet, a decision?
A. You mean you have to come back or anything?
Q. A decision resulting from a November 23 hearing?
A. No, ma'am, because that's why I didn't do anything. I assumed it was being took care of.
* * *
Q. So it wasn't when you saw Dr. Brustein?
A. Dr. Brustein told me I was no longer under Workers' Comp, that the company totally denied me.
Q. Well, how would Dr. Brustein get that information?
A. I have no idea, ma'am. All I know is he's a Workers' Comp doctor and he said when Workers' Comp no longer represents me, he cannot treat me. I had to go to another doctor if I wanted any future treatment.
Q. Is it your testimony that you didn't discuss the allowance or disallowance of your claim with Dr. Brustein?
A. I don't understand what you're asking me.
Q. Did you discuss the status of your claim with Dr. Brustein?
A. I asked him if I was still under Workers' Comp and he told me, yes, until the day — the last day he seen me when he told me that he had to cut me loose because the company denied my Workers' Comp and that they were not paying the bill anymore. So I had to do it on my own.
Q. He told you they weren't paying the bill already?
A. Well, I asked him who's going to pay the bill if Workers' Comp no longer will and I guess it was my responsibility with my insurance from work.
Q. Okay. The record from Dr. Brustein indicates your claim has been definitively disallowed for administrative reasons. Did you tell Dr. Brustein that?
A. I'm sorry. I just don't understand what you're saying to me here.
Q. Did you tell Dr. Brustein that your claim had been disallowed?
A. I didn't know it. Dr. Brustein is the one that told me he could no longer treat me because I wasn't under Workers' Comp, that the Inn of Medina had denied the claim.
(Tr. at 5-9.)
 {¶ 14} 13. The cross-examination of relator continued:
Q. When did you go and hire an attorney?
A. After my company fired me and told me that I was no longer under Workers' Comp[.]
Id. at 9.
 {¶ 15} 14. The cross-examination of relator further continued:
Q. Is that the first time [that you were aware that your claim had been disallowed]?
A. When Dr. Brustein told me on the 30th he could no longer treat me because I was no longer under Workers' Comp.
Q. And it's your testimony that Dr. Brustein just had that information?
A. Well, he must have because he told me he could no longer treat me because I was no longer under Workers' Comp.
Id. at 11.
 {¶ 16} 15. On June 8, 2005, the commission mailed an order denying relator's request for reconsideration of the SHO order of May 10, 2005.
 {¶ 17} 16. On July 22, 2005, relator, Charlotte J. Hadley, filed this mandamus action.
Conclusions of Law:
 {¶ 18} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 19} R.C. 4123.522 states:
The employee, employer, and their respective representatives are entitled to written notice of any hearing, determination, order, award, or decision under this chapter[.] * * * An employee, employer * * * is deemed not to have received notice until the notice is received from the industrial commission or its district or staff hearing officers, * * * by both the employee and his representative of record, both the employer and his representative of record[.] * * *
If any person to whom a notice is mailed fails to receive the notice and the commission, upon hearing, determines that the failure was due to cause beyond the control and without the fault or neglect of such person or his representative and that such person or his representative did not have actual knowledge of the import of the information contained in the notice, such person may take the action afforded to such person within twenty-one days after the receipt of the notice of such determination of the commission. Delivery of the notice to the address of the person or his representative is prima-facie evidence of receipt of the notice by the person.
 {¶ 20} In Weiss v. Ferro Corp. (1989), 44 Ohio St.3d 178,180, the court had occasion to analyze R.C. 4123.522. The court states:
There is a rebuttable presumption, sometimes called the "mailbox rule" that, once a notice is mailed, it is presumed to be received in due course. See Young v. Bd. of Review (1967),9 Ohio App.2d 25 * * *; and Kimberly v. Arms (1889),129 U.S. 512, 529, 9 S.Ct. 355, 361[.] * * * R.C. 4123.522 provides that such presumption may, upon application to the commission, be rebutted by evidence which shows that the addressee did not receive the mailed notice, and "* * * that such failure was due to cause beyond the control * * *" of that person.
The Weiss court further states:
The purpose of R.C. 4123.522 is to extend the time for appeal in any case where a person can rebut the presumption of receipt of notice of the decision from the commission arising under the "mailbox rule." * * *
* * *
* * * In order for a party to file for relief under R.C.4123.522, it obviously must have knowledge of the adverse decision of the commission. Without such knowledge, there would be no reason to file for relief under R.C. 4123.522. Therefore, knowledge cannot preclude relief under R.C. 4123.522 under all circumstances. If it did, R.C. 4123.522 would be reduced to a nullity. The purpose of the knowledge proviso is to prevent a party from delaying the filing of an appeal where notice has been sent to both the party and his representative, and one of them has not received such notice but is fully aware of the decision and receipt thereof by the other[.] * * *
Id. at 182-183.
 {¶ 21} In State ex rel. LTV Steel Co. v. Indus. Comm.
(2000), 88 Ohio St.3d 284, the court had further occasion to analyze R.C. 4123.522:
Employers and their representatives are entitled to receive notice from the commission under R.C. 4123.522, but that right is not self-executing. As the court of appeals found, the party alleging the failure to receive notice must first prove that (1) the failure of notice was due to circumstances beyond the party's or the party's representative's control, (2) the failure of notice was not due to the party's or the party's representative's fault or neglect, and (3) neither the party nor the party's representative had prior actual knowledge of the information contained in the notice. Weiss v. Ferro Corp. (1989),44 Ohio St.3d 178, 180[.] * * * Only if the commission makes these findings does the moving party become unconditionally entitled to what amounts to a second notice of a commission order. This second "reconstituted" notice actually comes from thecommission upon the determination that the moving party has rebutted the mailbox-rule presumption and that it is the one from which the new twenty-one-day appeal time is activated. * * *
Id. at 286-287. (Emphasis sic.)
 {¶ 22} Here, analysis begins with the observation that the commission, through its SHO, made two findings upon which it premised denial of R.C. 4123.522 relief. First, the commission found that relator had "actual knowledge" of the information contained in the DHO order that she allegedly did not receive. Second, based solely upon a finding that there exists no evidence that the mailed DHO order was returned to the commission file as "undeliverable," the commission suggests that delivery of the order to relator's address must have occurred which is prima facie evidence of receipt of the order under R.C. 4123.522.
 {¶ 23} The magistrate finds that both commission findings, as described above, constitute an abuse of discretion, compelling this court to issue a writ of mandamus.
 {¶ 24} The magistrate shall first address the commission's second finding which, as noted above, suggests that delivery to relator's address actually occurred. If this commission finding were to be upheld by this court, given the statutory presumption that delivery is prima facie evidence of receipt, relator's challenge to the commission's actual knowledge finding would be effectively rendered moot because relator does not claim that there were circumstances preventing receipt of mail actually delivered to her address.
 {¶ 25} The record contains a commission interoffice communication ("IOC") dated April 8, 2005. The IOC states: "addresses are correct nothing returned by mail." (Emphasis omitted.)
 {¶ 26} Apparently, the SHO relied upon the April 8, 2005 IOC although it is not cited in the SHO order of May 10, 2005.
 {¶ 27} Absence of evidence that the DHO order was returned to the commission file as undeliverable cannot, by itself, support a finding that the order was in fact delivered to the address listed on the DHO order. Absence of such evidence does not rule out that the item may have been misdelivered by the post office to the wrong address. Misdelivery to the wrong address would not necessarily cause a return of the item to the commission, given that the item was sent by ordinary mail and not by return receipt requested.
 {¶ 28} Other than evidence that it was mailed, there is no evidence that the order was actually delivered to the correct address. Thus, the magistrate concludes that the commission did not rely upon some evidence showing that the order was actually delivered to relator's mailbox so that receipt of the order can be statutorily presumed.
 {¶ 29} The magistrate shall now address the commission's finding that relator had actual knowledge of the information contained in the DHO order.
 {¶ 30} The LTV Steel decision presents a case of actual knowledge that sharply contrasts with the instant case.
 {¶ 31} In LTV Steel, it was held that the employer had actual knowledge of the commission order at issue when the claimant, according to his testimony, gave the order to LTV Steel's workers' compensation administration which stamped it as received and returned a stamped copy to him. The claimant submitted the stamped document to the commission at the hearing.
 {¶ 32} In the instant case, we have relator's hearing testimony that she first became aware that her industrial claim had been denied on December 30, 2004, when Dr. Brustein informed her that he could no longer treat her because she no longer had workers' compensation coverage. The SHO apparently credited that testimony in holding that relator had actual knowledge of the information contained in the DHO order.
 {¶ 33} That relator was verbally informed on December 30, 2004 by Dr. Brustein that she no longer had workers' compensation coverage does not support a finding that relator had "actual knowledge of the import of the information contained" in the DHO's order as required by the terms of R.C. 4123.522.
 {¶ 34} Had Dr. Brustein provided relator with a copy of the DHO's order of November 23, 2004, it would have informed her not only that her industrial claim had been denied in its entirety, but, also, that her appeal must be filed within 14 days of her receipt of the order.
 {¶ 35} Dr. Brustein did not provide relator with a copy of the DHO's order. At best, relator was informed orally by Dr. Brustein that her industrial claim had been denied, but she was not informed as to her appeal rights with respect to the denial. Thus, relator was not informed of the import of all the key information contained in the order.
 {¶ 36} Under the circumstances here, it is clear that relator did not obtain from Dr. Brustein "actual knowledge of the import of the information contained" in the DHO's order.
 {¶ 37} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order denying R.C. 4123.522
relief, and to enter an order granting R.C. 4123.522 relief.